IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARLINA COX                                                    PLAINTIFF

V.                                    CIVIL ACTION NO. 3:18-CV-677-KHJ-LGI

SCOTT COUNTY SCHOOL DISTRICT; DR. TONY            DEFENDANTS
McGEE, SUPERINTENDENT OF THE SCOTT
COUNTY SCHOOL DISTRICT, individually and
in his official capacity; NANCY BUTLER,
individually and in her official capacity;
CHAD HARRISON, ASSISTANT SUPERINTENDENT
OF THE SCOTT COUNTY SCHOOL DISTRICT,
individually and in his official capacity;
AND JILL KILLEN, FEDERAL PROGRAMS
COORDINATOR AND TITLE IX COORDINATOR OF
THE SCOTT COUNTY SCHOOL DISTRICT,
individually and in her official capacity;
and JOHN DOES X, Y, AND Z

ORDER

This action is before the Court on the Motions for Summary Judgment filed

by Defendants Nancy Butler [62], Dr. Tony McGee [64], and Chad Harrison and Jill

Killen [66]. For these reasons, the Court grants all three motions.

I.      Facts and Procedural History

Plaintiff Marlina Cox, an African American woman, has worked as a certified

teacher at Lake Middle School in the Scott County School District ("SCSD") since

2007. [4], ¶¶ 67; [62-1] at 11. She still teaches at Lake Middle School today. *Id.* ¶ 67.

Cox suffers from dystonia, a condition that renders her unable to use her right hand

and causes "multi-directional instability of the shoulder." [4], ¶ 70. Nancy Butler

has been the Principal of Lake Middle School since 2013, *id.*, ¶ 77; Dr. Tony McGee has been the Superintendent of SCSD since 2015, [64-5] at 6; Chad Harrison has been the Assistant Superintendent of SCSD since 2014, [66-1] at 3; and Jill Killen has been the Federal Programs Coordinator since 2014 and the Title IX Coordinator since 2016. [66-2] at 9, 20-22. Cox sues SCSD and all the above Defendants in their official and individual capacities.

Cox filed her first Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") at the end of the 2015-16 school year, alleging Principal Butler discriminated against her based on race and disability. [4] at 22-24. Cox alleged that "non-disabled Caucasian teachers [were] treated better"; that Butler permitted other teachers to watch video footage of a break-in at the school, but not Cox; that Butler made her attend a field trip even though she was "having issues with her recent change of medication"; and that Butler "moved [her] down" from teaching seventh and eighth grade to sixth grade. *Id.*; [62-5]. Cox also alleged Butler gave her a "negative evaluation" in May 2016[1] and informed her she would have to move to a different classroom the next year.[2] *Id.*

---

[1] Butler, however, testified that Cox's evaluation was based in part on the "lack of higher order thinking skills in her lesson plans," and when she realized Cox used an alternate lesson plan that did not incorporate "higher level learning … [and] thinking skills," to accommodate her disability, Butler reevaluated and raised her score. [63] at 18; [83-10] at 76:1-80:17.

[2] Butler later decided not to have Cox move classrooms for the 2016-17 school year. Butler testified she "kept [Cox] in her classroom for that school year … because she was teaching sixth grade social studies." [62-5]; [83-10] at 95-96. According to Butler, she shuffled other teachers' classrooms to separate sixth graders from seventh and eighth graders for safety concerns. *Id.*

SCSD responded to Cox's first Charge of Discrimination in September 2016, contending it "ha[d] knowledge of [Cox's] dystonia medical condition and has provided several accommodations to assist [Cox] in performing the essential functions of her position . . . [such as] allow[ing her] to wear electrodes attached to her arm during work, . . . [and] to leave school early, before the student buses leave, so that she [could] attend physical therapy sessions" twice a week. [83-10] at 90-94; [84] at 18.

Cox agreed to settle her first Charge of Discrimination without monetary compensation. [4] at 94. In exchange, SCSD agreed to give Cox "non-instructional time to take necessary medication"; to provide Cox with a "planning period"; to inform Cox "what she will have to teach in advance" and to allocate necessary resources to do so; to notify Cox of any "faculty meetings" or "criminal activities that happen at school" to the same extent as other employees; and not to punish Cox for "missing meetings on the days of her physical therapy" as long as Cox provided notice. [64-2]. SCSD did not agree to reassign Cox back to teaching seventh and eighth grade. *Id.*

For the 2016-17 school year, Principal Butler assigned Cox to teach sixth grade social studies and "i-Ready," a computer-based "learning skills" class.[3] [64] at

---

[3] Cox complains she was "not certified" to teach sixth grade, but Principal Butler states teachers are permitted to "teach one grade level below their certified area." [84-19] at 12. Butler explains she needed to move another teacher, Mr. Harrell, from seventh grade math into seventh grade social studies (which Cox once taught) because "his students had two consecutive years of low math scores." [63] at 5. Dr. McGee testified there was nothing unusual about reassigning a teacher's grade level or subject matter. [64] at 4.

4. That February, Cox emailed Butler and Antonio Jones (an EEOC investigator) asking what time she could take her medication each day. [83-11] at 32. Jones informed Cox her medication timeline was "[her] business," and Butler affirmed, "as Mr. Jones stated, I cannot tell you when to take your medication. You need to tell me when you need to take your medications and we will help you get someone to cover your class while you take [it]." *Id.* Because Cox needed to take her medication at noon, Butler "tried to […] go in and cover her class" herself each day, but "missed several times" because of "parent meeting[s]" or other administrative matters.[4] [85-10] at 137-38. Two months later, Cox emailed Butler and Jones again, copying Superintendent McGee, expressing her concerns over "what she would be teaching" the next year and stating she "fe[lt] like the agreement [was] being violated." [85-10] at 148; [64-5] at 61-64.

At the end of the 2016-17 school year, the school planned a field trip to Folsom, Louisiana, to visit the wildlife refuge. [83-10] at 31-34. Cox "did not want to travel" and informed Butler her "medical issues . . . would not allow her to go." *Id.* Butler requested medical documentation to verify that Cox could not travel. *Id.* While Cox contends field trips were not mandatory for other teachers, *see* [4], ¶ 101, Butler testified that if any other teacher were unable to attend a field trip due to illness, she would request the same documentation. [83-10] at 31-34. Cox provided the medical excuse, and Butler did not require her to attend the field trip. *Id.* at 35.

---

[4] Butler testified that when she was unable to relieve Cox to go and take her medication, Butler would send her secretary or the librarian, who taught across the hall from Cox, to relieve her. [85-10] at 138-40.

Either that summer or in August 2017 (parties dispute the timeline), Butler informed Cox she would be teaching sixth grade social studies and computer science during the 2017-18 school year. [83-10] at 154. Butler also assigned Cox to serve as the "RTI (Response to Intervention) chairperson" and "assistant test coordinator." *Id.* at 159. Cox contends her new position was "less significant" and "less prestigious." [4] at 103. Cox's RTI responsibilities included preparing paperwork for students who required "Tier II instruction" and possible remediation. [83-10] at 154. Cox complains she received inadequate RTI training and only limited access to the RTI software program, "Renaissance." [62] at 22-24; [64] at 5-6.

Yet when McGee offered to "schedule some training for [her] so [she would] feel more comfortable with the system," Cox declined. [62-11] at 117-18. And while Cox alleges her "limited access" to Renaissance made her job harder, Butler testified Cox could have accessed the necessary information via "SchoolStatus," another student monitoring program. [83-10] at 182. In any event, when Cox informed Butler her teacher passcode had limited access to Renaissance, Butler allowed Cox to use Butler's own administrator passcode which had full access. *Id.* at 180.

Cox also complains Butler moved her to a different classroom with an adjoining office for the 2017-18 school year. Cox temporarily shared her new classroom space with another teacher, which meant one of the two teachers would have to teach from the library at times. [62-1] at 37, 221. When Cox "showed concern" over having to travel back and forth between classrooms, McGee and

Butler "moved [the other teacher] over to the library … to accommodate [Cox]." [62-11] at 249.

Cox met with McGee several times between October and December 2017 about her problems with Butler. Butler was present at one meeting, and Killen was present at another. [83-13] at 13-16. Cox's primary complaint included Butler's lack of communication ("Butler does not communicate with me[;] . . . she has stated in the past that she says as less as possible to me because she doesn't want any more charges filed against her . . . ."); being "left out of the loop" for meetings where other teachers were present; and her suspicion that Butler was discussing Cox's disability and her previous EEOC investigation with other staff. *Id.*

Cox filed an internal grievance against Butler the following January. [62-6]. The grievance form reflected Cox was complaining of discrimination based on race and disability, and in the materials attached, Cox stated she felt she had been "retaliated against after an EEOC agreement was reached" with SCSD. *Id.* She complained that she was not released to take her medication at noon on at least one occasion; that when she was late for a staff meeting, Butler would not allow her to sign in even though she permitted other latecomers to do so; that Butler cancelled at least three meetings with her; and that there was an overall "breakdown in communication" about RTI materials with Butler. *Id.* Defendants Killen and Harrison investigated Cox's internal grievance. [64-8] at 71-74.

A week after filing her internal grievance against Butler, Cox filed a second Charge of Discrimination with the EEOC. [66-5]. Cox complained she was "given a

6

closet as [her] office" that was inadequate for performing RTI duties; "locked out of programs" that were necessary for her job; "given late meeting notices"; "reassigned" to different job duties; "denied training" and "a reasonable accommodation"; and "was not informed when a student entered [her] school with a gun."[5] *Id*. Notably, Cox also complained she was "no longer considered a lead teacher" after filing her first Charge of Discrimination. But when Killen and Harrison questioned this "factual misstatement" in Cox's second Charge of Discrimination, Cox submitted supplemental correspondence to the EEOC clarifying that she was never lead teacher. [62-13] at 28.

Killen and Harrison's internal grievance investigation concluded a few months after Cox filed her second Charge of Discrimination. [64] at 8-9. Their 29-page Confidential Report [62-13] included a detailed investigation into each of Cox's complaints and concluded Cox did not establish discrimination or retaliation based on race or disability. *Id*. at 28. The Report did, however, require Butler to "undergo additional training" in communication and stated, "the School District expects her to modify her communication style . . . to ensure the message she attempts to communicate is correctly conveyed." *Id*. Cox appealed Killen and Harrison's findings to Dr. McGee, who held a hearing in April 2018 and upheld their determination that Cox failed to establish discrimination or retaliation. [64] at 9-10.

---

[5] Cox testified she thought Butler told staff at a faculty meeting that an eighth grader brought a gun to school. Cox was not present for the meeting because she was at physical therapy. Even so, she testified that "some of the students told her" about the gun on "the same day they found it." Further, Cox admitted she had no proof that Butler in fact told other faculty about the gun and not her, but that "this [was] just [her] belief … because of past experience" with Butler. [83-8] at 164-67.

Cox filed another internal grievance a month later, submitting this one to the Scott County Board of Education. *Id.* at 11. The Board held a hearing and Cox was permitted to testify. [64-16]. The Board upheld Dr. McGee's findings and ruled that Cox "failed to provide sufficient evidence to meet her burden of proof" to show discrimination based on race or disability or retaliation for filing her first Charge of Discrimination. [66-17]. Cox received a Right to Sue letter from the EEOC in June 2018 and filed this lawsuit later that year. She alleges Defendants violated her federal statutory rights under Titles VI and VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act of 1963. She also alleges Defendants violated her First Amendment rights and her Fourteenth Amendment rights to Due Process and Equal Protection. Butler [62], McGee [64], and Harrison and Killen [66] move for summary judgment on all claims.

## II.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Levy Gardens Partners 2007, L.P. v. Commw. Land Title Ins. Co.*, 706 F.3d 622, 628 (5th Cir. 2013) (citation omitted). "An issue is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In analyzing a motion for summary judgment, "the judge's function is not [her]self to weigh the

8

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019) (quoting *Anderson*, 477 U.S. at 249).

A party seeking to avoid summary judgment must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013).

III.   Analysis

First, Defendants move for summary judgment arguing Cox's federal statutory claims under Titles VI and VII of the Civil Rights Act of 1964, the ADA, and the Rehabilitation Act of 1963 are not cognizable against Defendants in their individual capacities. Second, Defendants assert a qualified immunity defense against Cox's constitutional claims. The Court will address each argument in turn.

A.   Federal Statutory Claims

1.   Title VI

Cox alleges she faced discrimination and retaliation in violation of Title VI of the Civil Rights Act of 1964. [4] at 53-55. Title VI prohibits discrimination on the basis of race, color, or national origin in programs or activities receiving federal financial assistance. 42 U.S.C.A. § 2000d. The law is settled that individual defendants cannot be liable under Title VI. *Price ex rel. Price v. Louisiana Dep't of*

*Educ.*, 329 F. App'x 559, 561 (5th Cir. 2009) ("[O]nly public and private entities can be held liable under Title VI."); *Shotz v. City of Plantation*, 344 F.3d 1161, 1171 (11th Cir. 2003) ("It is beyond question . . . that individuals are not liable under Title VI."); *United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1044 n. 9 (5th Cir. 1984) (same).

Because Title VI claims are only cognizable against public and private entities, the Court grants summary judgment and dismisses Cox's Title VI claim against all Defendants in their individual capacities.[6]

2.    Title VII

Cox also alleges she faced racial discrimination, harassment, and retaliation that was "directly related" to Cox's filing her first and second Charges of Discrimination in violation of Title VII. [4] ¶ 268.

Much like Cox's Title VI claims against individual defendants, the analysis for Cox's Title VII claims against individual defendants is straightforward. "Individuals are not liable under Title VII in either their individual or official capacities." *Ackel v. Nat'l Comms., Inc.*, 339 F.3d 376, 381 n. 1 (5th Cir. 2003) (citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 448–49 (5th Cir. 2002)). The Court

---

[6] No party has pointed to any case law, and the Court has not found any on its own, addressing whether Cox may properly bring claims under Title VI against Defendants in their official capacities. The Court need not resolve the propriety of a Title VI suit against official capacity Defendants here. "Even assuming a principal or superintendent sued in his or her official capacity were a proper Title VI defendant, an official capacity suit is 'only another way of pleading an action against an entity of which an officer is an agent.'" *Mayorga Santamaria ex rel. Doe Child. 1-3 v. Dallas Indep. Sch. Dist.*, No. 3:06-cv-692-L, 2006 WL 3350194, at *48 (N.D. Tex. Nov. 16, 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). Because Cox also sues SCSD, any official capacity claims against Butler, McGee, Harrison, or Killen are redundant.

therefore grants summary judgment for Butler, McGee, Harrison, and Killen in their individual and official capacities on Cox's Title VII claims.[7]

### 3.    ADA and Rehabilitation Act

Cox alleges Defendants subjected her to discrimination based on her disability "in violation of the Rehabilitation Act and the ADA." [4] at 43. Cox complains Defendants failed to make "reasonable accommodations to the known physical limitations of an otherwise qualified individual with a disability[.]" *Id.*

Here, too, Cox may not sue Defendants in their individual capacities. "The text of the Rehabilitation Act does not provide for suit against a defendant in his or her individual capacity"; only the public "entity" is amenable to such claims. *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999). And because the "rights and remedies under the ADA and the Rehabilitation Act are the same, caselaw interpreting one statute can be applied to the other." *Nottingham v. Richardson,* 499 F. App'x 368, 376 (5th Cir. 2012) (citing *Pace v. Bogalusa Cty. Sch. Bd.*, 403 F.3d 272, 287-88 (5th Cir. 2005); *see also Gerald v. Univ. of S. Miss.*, No. 2:12-cv-147-KS-MTP, 2014 WL 172113, at *5 (S.D. Miss. Jan. 15, 2014) ("[D]istrict courts within the Fifth Circuit have also dismissed ADA claims asserted against defendants in their individual

---

[7] This ruling does not extend to Cox's allegations of racial discrimination against Defendants in their individual capacities under 42 U.S.C. § 1983. "[A] public sector employee may assert claims of racially discriminatory employment practices under both Title VII and section 1983, because the Constitution provides a right independent of Title VII to be free from race discrimination by a public employer." *Southard v. Texas Bd. of Crim. Just.*, 114 F.3d 539, 549–50 (5th Cir. 1997).

capacities given the similarities between the ADA and Rehabilitation Act.")
(collecting cases).

The Court therefore grants summary judgment for Butler, McGee, and
Harrison and Killen in their individual capacities on Cox's ADA and Rehabilitation
Act claims.[8]

In sum, before moving to Cox's constitutional claims, this Court dismisses the
following federal statutory claims: (1) Cox's Title VI claims against the individual
Defendants in their individual capacities; (2) Cox's Title VII claims against the
individual Defendants in their individual and official capacities; and (3) Cox's ADA
and Rehabilitation Act claims against the individual Defendants in their individual
capacities. Where applicable, this Court will not undertake a separate analysis of
Cox's claims against these Defendants in their official capacities, since the SCSD,
"the real party in interest," is a party to this lawsuit, and the claims against
Defendants in their official capacities are claims against SCSD. *See Graham*, 473
U.S. at 165-66 (stating official capacity claims "represent only another way of
pleading an action against an entity of which an officer is an agent").

---

[8] This ruling extends to any allegations of disability discrimination asserted against the
Individual Defendants in their individual capacities under 42 U.S.C. § 1983. *Gerald v.
Univ. of S. Mississippi*, No. 2:12-cv-147-KS-MTP, 2014 WL 172113, at *5 (S.D. Miss. Jan.
15, 2014). Unlike with Cox's claims under Title VII, section 1983 *cannot* "be used as an
alternative method for vindicating rights granted by the Rehabilitation Act." *See Lollar*,
196 F.3d at 608–10 (reasoning that Congress's enactment of a comprehensive enforcement
mechanism to protect individuals with disabilities through 29 U.S.C. § 794(a) foreclosed
resort to the general remedial provisions of 42 U.S.C. § 1983); *see also D.A. ex rel. Latasha
A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 456–57 (5th Cir. 2010) (following *Lollar* and
holding that the plaintiff could not pursue his ADA and Rehabilitation Act claims against
the defendant school district through § 1983).

B.      Constitutional Claims

Cox seeks more relief under 42 U.S.C. § 1983 for alleged violations of her

rights under the First Amendment, as well as her rights to Due Process and Equal

Protection under the Fourteenth Amendment. Section 1983 does not provide a

general remedy for state law torts, nor does it grant all individuals suffering

injuries at the hands of state actors access to federal courts. *White v. Thomas*, 660

F.2d 680, 683 (5th Cir. 1981). The statute "affords a remedy only to those who

suffer, as a result of state action, deprivation of 'rights, privileges, or immunities

secured by the Constitution and laws' of the United States." *Id.* (quoting 42 U.S.C. §

1983).

To state a cognizable § 1983 claim, "a plaintiff must (1) allege a violation of a

right secured by the Constitution or laws of the United States and (2) demonstrate

that the alleged deprivation was committed by a person acting under color of state

law." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir.

2012) (internal quotation omitted). A § 1983 complainant must set forth specific

facts showing a constitutional violation, not merely conclusory or speculative

allegations of wrongdoing. *Gerald*, 2014 WL 172113, at *15 (citing *Fee v. Herndon*,

900 F.2d 804, 807 (5th Cir. 1990); *Angel v. City of Fairfield, Tex.*, 793 F.2d 737, 739

(5th Cir. 1986)). In addition, the complainant must show "the defendant was either

personally involved in the deprivation or that his wrongful actions were causally

connected to the deprivation." *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 349 (5th

Cir. 2012).

A supervisory official "cannot be held liable under § 1983 for the actions of subordinates on any theory of vicarious liability." *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 365 (5th Cir. 2007) (citation omitted). Supervisory officials may only be held accountable under § 1983 if they affirmatively participate in the acts causing the constitutional violation or implement unconstitutional policies that result in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009) (citing *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

Individual Defendants here assert the defense of qualified immunity, which shields them from suit if "their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012) (internal citations omitted). Cox has the "burden to negate the defense once properly raised." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)). To overcome the defense of qualified immunity, Cox must show: "(1) the official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct." *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)).

### 1.    First Amendment Retaliation

Cox alleges Defendants retaliated against her because she engaged in "constitutionally protected conduct" when she "report[ed] that Ms. Butler had

14

violated the Executed Agreement approved by the EEOC[.]" [4] at 63-64. She says the most "glaring" example of First Amendment retaliation was when Defendants "ignored" her "plea for Defendant Butler to let her work in a hostile free place to work and not violate the Executed Agreement or federal law[.]" *Id.* She also says Defendants retaliated against her for complaining that Lake Middle School used "wheelchairs and walkers" in an insensitive manner during the school's March 2018 "Olympic Games."[9] *Id.* Defendants respond that Cox's complaints were mere "personal disputes" with Butler and therefore do not rise to the level of "matters of public concern" that the First Amendment protects. *See* [63] at 16.

To prove a First Amendment retaliation claim via § 1983, a plaintiff must show: (1) she suffered an adverse employment decision; (2) her speech involved a matter of public concern; (3) her interest in speaking out on matters of public concern outweighed the employer's interest in promoting efficiency; and (4) her protected speech motivated the defendant's conduct. *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011).

As to the first element, Defendants contend Cox cannot show she suffered an adverse employment decision because "she was not suspended, demoted, or terminated," "nor was her pay decreased." [63] at 18. In fact, Cox's pay was

---

[9] At times, however, the Court finds Cox's arguments and briefing on this claim difficult to follow. For example, at one point, Cox states, "the Plaintiff alleges that his firing was retaliatory conduct that effectively deprived him of his constitutional right to free speech." [87] at 39. But Cox was not fired and is a female. And at another point, Cox appears to argue the Louisiana statute of limitations applies to her § 1983 claim, even though it is undisputed that no events supporting this lawsuit occurred in Louisiana. [86] at 46 ("The applicable period provided by state law is applied, in this case Louisiana's one-year personal injury limitations period.").

increased after she filed her First Charge of Discrimination in 2016. *Id.* Cox

responds that her "reassignment" to teaching a different grade level, in a different

classroom, with "significantly different responsibilities" made her work

"intolerable." [87] at 37-38. The Fifth Circuit has recognized that while disputes

over "teaching assignments" and "classroom equipment" might be "extremely

significant" to teachers who have devoted their lives to their careers, these alleged

harms "do not rise to the level of a constitutional deprivation." *Dorsett v. Bd. of*

*Trustees for State Colleges & Univ.*, 940 F.2d 121, 123–24 (5th Cir. 1991)

("[I]nterfaculty disputes arise daily over teaching assignments, room assignments,

administrative duties, classroom equipment, teacher recognition, and a host of other

relatively trivial matters. A federal court is simply not the appropriate forum in

which to seek redress for such harms."). The Court does not find Cox suffered an

adverse employment action here.

Even if Cox could show her classroom and grade level reassignment

constituted an adverse employment decision, she still cannot show her speech

involved matters of public concern. Cox complained about not teaching in the

classroom she desired ("I was disappointed in how I was moved out of my room . . .

and how they painted over the map that was on the [classroom] wall . . . ."); not

teaching the grade level or subject area she desired ("I was told I . . . would not have

any social studies classes. I would be working with 5th and 6th grade students with

the CS4MS."); lack of communication from Principal Butler ("I am given late

meeting notices . . . Butler . . . said she would meet with me after my 5th period

class. I did not hear anything from her and she did not answer her email."); and inadequate training in her new teaching assignment ("I have been put in the RTI position without having any training and I do not have needed material for the CS4MS class. . . . I was told to complete the RTI information binder without giving me what I need and with little guidance."). [62-6] at 3-6.

It cannot be said that Cox lodged these complaints "primarily in [her] role as a citizen." *Terrell v. Univ. of Texas Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986). Instead, her speech involves "matters of personal interest"—made "primarily in [her] role as an employee"—and relates only to Cox's "personal employer-employee dispute" with Butler. *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 382 (5th Cir. 1999). And while Cox's complaint about "discriminatory handling of the 'Olympic Games'" may constitute a matter of public interest in that the public is interested in discouraging mistreatment of students with disabilities, this does not render the whole of Cox's speech protected. First, there is no evidence that Cox ever spoke publicly about the matter.[10] She merely submitted an internal administrative complaint and never even mentioned it in her EEOC charges. And second, merely inserting "a scintilla of speech regarding a matter of public concern" cannot make a federal case out of an otherwise "private matter fueled by private, non-public interests." *Teague*, 179 F.3d at 382. Cox has not produced a single case in which "mixed speech" of a predominantly private character has been afforded constitutional protection, and the Court declines to extend it here.

---

[10] *See Dorsett*, 940 F.2d at 125 (finding that employee's speech was not public when he did not direct his complaints to anyone outside the university).

Because this Court concludes Cox did not suffer an adverse employment action and her speech did not address a matter of public concern, we need not consider whether her interest in free speech outweighed the state's interest in efficiency or whether her speech motivated an adverse employment decision. This Court grants summary judgment on Cox's First Amendment retaliation claim against the Individual Defendants.

2. Due Process

While Cox does not expressly bring a separate claim for Due Process violation in her Second Amended Complaint, she seems to assert a claim arising out of Defendants' "smear[ing] her name and reputation" and accusing her of "perjury" in retaliation for filing her internal complaint and EEOC charges. [4] ¶ 155. Because Cox alleges certain Defendants' statements that she "committed perjury" damaged her reputation, this Court will interpret her allegation as a "stigma-plus-infringement claim" under the Due Process Clause of the Fourteenth Amendment. *See Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006) (citations omitted) (explaining a stigma-plus-infringement claim exists where "the government discharges an employee amidst allegations of misconduct," giving the employee "a procedural due process right to notice and an opportunity to clear his name.").

"Damage to reputation alone" does not trigger the protections of due process. *Id.* (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Instead, a plaintiff alleging a violation of her procedural liberty interest in obtaining "notice and an opportunity

to clear [her] name" must prove seven elements: (1) she was discharged; (2) stigmatizing charges were made against her in connection with the discharge; (3) the charges were false; (4) she was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) she requested a hearing to clear her name; and (7) the employer denied the request. *Id.* at 653.

To begin, Cox cannot maintain a claim for the deprivation of a liberty interest against Butler because she does not allege Butler personally made any false statement against her. *See Blackburn v. City of Marshall*, 42 F.3d 925, 936 (5th Cir. 1995). As for McGee, Harrison, and Killen, who Cox alleges "defamed" her with false allegations of perjury, Cox's stigma-plus-infringement claim fails on the first element. Defendants correctly point out that Cox was never suspended or discharged from her position. [67] at 25 (citing *Bledsoe*, 449 F.3d at 653). Cox does not respond to this argument. *See* [88] at 45-47.

Cox's claim necessarily also fails on the fourth element—that she was "not provided notice or an opportunity to be heard prior to the discharge"—because, in fact, SCSD provided Cox with *two* hearings where Cox had a chance to clear her name of the perjury allegations. *See* April 27, 2018 Hearing Transcript [62-16]; May 14, 2018 Hearing Transcript [66-16]. In one of the hearings, Cox admitted she signed her EEOC charge under penalty of perjury knowing some of the information it contained was false. [62-16] at 28-29 ("Q. You signed this knowing that the information in the document [about no longer being considered lead teacher] was false? A. Right.").

This Court therefore grants summary judgment on Cox's stigma-plus-infringement Due Process claim against the Individual Defendants.

### 3.  Equal Protection

Cox claims Butler, McGee, Harrison, and Killen "violated the Equal Protection Clause of the Fourteenth Amendment" by subjecting her to discriminatory and retaliatory treatment based on both her race and disability. [4] ¶ 10; [87] at 30. Defendants respond that there is no genuine issue of material fact which establishes Cox was "treated disparately from similarly situated cohorts based on race or disability," but instead, that there were "neutral, non-discriminatory reasons for the employment decisions" and "findings of the internal investigation." [63] at 23; [64] at 18; [66] at 11.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To maintain her Equal Protection claim, Cox must prove she "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001).

### a.  Race Discrimination

"On the most fundamental level," Cox must allege treatment that is "unequal" to provide a basis for her claim of race discrimination under the Equal Protection Clause. *Austin v. Carwyle*, No. 3:15-cv-177-SA-SAA, 2016 WL 1622007, at *2 (N.D. Miss. Apr. 19, 2016).

20

As Cox points out, it is not enough to simply show "disproportionate impact"; to provide a basis for her constitutional race discrimination claim, Cox must prove Defendants acted with a "discriminatory purpose." *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992); *see also Village of Arlington Hts. v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) ("[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). Discriminatory purpose in the Equal Protection context "implies that the decisionmaker selected a particular course of action at least in part *because of, and not simply in spite of,* the adverse impact it would have on an identifiable group." *Id.* (citing *Personnel Adm'r v. Feeney*, 442 U.S. 256, 272 (1979) (emphasis supplied)).

Employment discrimination claims brought under § 1983 "are analyzed under the evidentiary framework applicable to claims arising under Title VII[.]" *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999) (citations omitted).[11] To maintain a claim for intentional discrimination under § 1983, Cox must prove a prima facie case via either direct evidence of discriminatory motive or circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, Cox does not seek to prove her case via direct evidence, but "presents her case under *McDonnell Douglas* and its progeny." [87] at 25.

---

[11] As the Court noted in section III.A.2. above, Title VII does not preempt § 1983 claims of discrimination, and a plaintiff may assert her claims under both Title VII and section 1983 "because the Constitution provides a right independent of Title VII to be free from race discrimination by a public employer." *Southard*, 114 F.3d at 549–50.

Under this burden-shifting framework, Cox must show: (1) she belongs to a protected class; (2) she was qualified for the position at issue; (3) she was discharged or suffered some adverse employment action by the employer; and (4) she was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)). Once Cox has established her prima facie case, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). If Defendants can articulate a reason that would support a finding that the action was nondiscriminatory, "the inference of discrimination created by the plaintiff's prima facie case disappears, and the factfinder must decide the ultimate question of whether the plaintiff has proven intentional discrimination." *Matthews v. City of W. Point, Miss.*, 863 F. Supp. 2d 572, 589 (N.D. Miss. 2012) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511–12 (1993)).

Of particular relevance here, Cox must show she suffered an adverse employment action.[12] "Adverse employment actions have been held to include

---

[12] Again, the Court finds Cox's position about an adverse employment action difficult to follow. Cox states, "In an action such as this one, which involves a transfer upon reinstatement to [sic] employment, 'the key inquiry is whether the transfer constitutes a negative employment action tantamount to a demotion.'" [87] at 37 (citing case law from the Southern District of New York). First, this case does not involve a transfer after Cox's employment was reinstated; the record does not show Cox was ever terminated. Second, while the Court is sympathetic to Cox's perception that her change in job duties constituted a demotion, "a plaintiff's subjective perception that a demotion has occurred is not enough"

ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating. They have been held inapplicable to minor management decisions." *Thompson v. Sanderson Farms, Inc.*, No. 3:04CV837BN, 2006 WL 2711497, *8 (S.D.Miss. Sept. 21, 2006); *see also Liddell v. Northrop Grumman Shipbuilding, Inc.*, 836 F. Supp. 2d 443, 456 (S.D. Miss. 2011). For the reasons already outlined in the Court's First Amendment retaliation analysis, *see supra,* Section III.B.1., this Court is not persuaded that Cox suffered an adverse employment action.

Moreover, Cox has not shown Defendants treated her "less favorably than other similarly situated employees outside [her] protected group." A plaintiff is treated "less favorably" when a defendant gives preferential treatment to a member outside the protected class under "nearly identical circumstances." *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991). Cox contends that "as the only African American certified teacher at Lake during the material times, [she] saw Caucasian teachers given preferential treatment over her, from losing her seventh and eighth grade classes (and having to explain to students and parents what happened to her) to losing her classroom to a new hire, Ms. Posey[,] during the 2017-18 school year; and failing to be properly trained in RTI by Defendant Butler." [87] at 25. The record, however, does not support these allegations.

---

to show an adverse employment decision. *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 221 (5th Cir. 1999) (citing *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996)).

It cannot be said that Defendants treated Cox "less favorably than other similarly situated employees" by having Cox temporarily share a classroom or changing which grade level Cox taught. First, the teacher with whom Cox temporarily shared a classroom is Caucasian, which necessarily means the two teachers received the same treatment. And while a "new hire" was placed in Cox's former classroom, the record shows teachers often moved classrooms. [83-10] at 98 ("I had a . . . seventh and eighth grade math teacher at the north end of the building, and I moved him to the south end of the building. I moved all seventh and eighth grade to the south end of the building and all fifth and sixth to the north end of the building."). Second, Butler identified multiple other Caucasian faculty members whose grade level and subject matter assignments changed from year to year based on the school's needs. *See id.* at 103-08 (Mr. Robinson moved from teaching PE to science; Ms. Gressett moved from teaching just eighth grade to both sixth and eighth grade; Ms. Burns moved from teaching science and math to math only). Finally, while Cox complains she received inadequate training for RTI—even though she declined training Dr. McGee offered—she does not allege or prove Caucasian teachers were better trained.

Because this Court is not convinced that Cox has proven her prima facie case, this Court finds summary judgment is appropriate for Cox's claim of racial discrimination under the Equal Protection Clause against the Individual Defendants.

b.  Hostile Work Environment

Next, Cox contends Defendants subjected her to a race-based hostile work environment because she made "repeated complaints of civil rights violations," which were "followed by no meaningful attempt on the part of Defendants Butler, *et al* investigate [sic] or forestall further incidents." [86] at 55. "Given that the Equal Protection Clause protects against a racially hostile work environment," the question becomes whether the record shows "that was what [s]he faced." *Johnson v. Halstead*, 916 F.3d 410, 417 (5th Cir. 2019).

A hostile work environment exists when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Id.* (citing *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "This last requirement, whether the harassment impacts the 'terms' or 'conditions' of employment, is key" to the analysis. *Id.* "Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

Cox has not proven harassment that was severe enough to alter the conditions of her employment at Lake. Cox cites only one example of racial animus on Butler's part that allegedly contributed to a racially hostile work environment:

> Defendant Butler made remarks of a negative nature towards the young 'Black children' children [sic] (students) in 2017 and called them 'hood rats' to their face. Butler was confronted about her statement of 'hood

rats' by Sharon Gail Wilson and Butler apologized. Wilson Declaration
at pg. 2.

[86] at 24. But hostile work environment claims require the allegations to go beyond

"offhand comments and isolated incidents." *Johnson*, 916 F.3d at 417 (citing

*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "[C]onduct must be

extreme to amount to a change in the terms and conditions of employment,"

*Fahrager*, 524 U.S. at 788, and here, Cox suggests no connection between Butler's

insensitive remark and a change in her own employment. She cites no "concrete

examples of how racial intimidation interfered with [her] work performance."

*Johnson*, 916 F.3d at 418.

While the Court recognizes Butler's comment, taken as true, was

inappropriate and distasteful, the "sporadic use of abusive language" does not

create a cause of action for a racially hostile work environment—especially when

the comment was not even directed toward Cox. *Fahrager*, 524 U.S. at 788. This

Court therefore grants summary judgment on Cox's hostile work environment claim

against the Individual Defendants.

    c.  Disability Discrimination

Unlike race, disability is not a suspect classification under the Equal

Protection Clause, so discriminatory disability policies are subject only to rational

basis review. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 442

(1985). Under rational basis review, the State actor "need not articulate its

reasoning at the moment a particular decision is made," but instead, the plaintiff

has the burden to negate "'any reasonably conceivable state of facts that could

provide a rational basis for the classification.'" *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). To state an Equal Protection claim for disability discrimination, a plaintiff must prove "similarly situated individuals were treated differently" and that she suffered "purposeful or intentional discrimination." *Austin*, 2016 WL 1622007, at *3 (citing *Stoneburner v. Sec'y of the Army*, 152 F.3d 485, 491 (5th Cir. 1998)); *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992).

Cox's briefing on this claim does not identify one instance of purposeful disparate treatment because she is disabled. In fact, Cox devotes much of her "disability discrimination" briefing to discussing race discrimination. *See, e.g.*, [87] at 28-29 ("To establish a prima facie case of racial discrimination under section 1983 an employee must demonstrate …"); *id.* at 28 ("Given that the Equal Protection Clause protects against a [sic] racial discrimination, the question becomes whether Cox has sufficiently alleged that was what she faced."). Her second Charge of Discrimination is no more specific, providing only a list of complaints with no causal connection to her disability and no comparison to other similarly situated individuals. *See* [1-2] ("My workspace is not adequate to perform RTI with my students . . . I have been denied training . . . I was not informed when a student entered the school with a gun.").

None of Cox's complaints establish she was treated differently than her similarly situated cohorts, and as such, cannot rise to the level of a constitutional deprivation. The Court therefore grants summary judgment on Cox's claim of

disability discrimination under the Equal Protection Clause against the Individual Defendants.

### d.  Retaliation

Finally, to the extent that Cox contends the Equal Protection Clause protects her against workplace retaliation, that claim is dismissed.

Cox claims, "the right to be free from retaliation under the Equal Protection Clause of the Fourteenth Amendment was clearly established at the time of the retaliatory actions[.]" [87] at 30. But "there is no such thing as a retaliation claim under the Equal Protection Clause." *Cordova v. City of Mansfield*, No. 04-1499, 2006 WL 2513923, at *7 (W.D. La. Aug. 29, 2006). Retaliation claims growing out of complaints of employment discrimination are not recognized, in this Circuit or others, under the Equal Protection Clause of the Fourteenth Amendment. *See, e.g.*, *Matthews v. City of W. Point, Miss.*, 863 F. Supp. 2d 572, 604 (N.D. Miss. 2012) (citing *Robinson v. Jackson Public Sch. Dist.*, 2011 WL 198127, at *5 (S.D. Miss. Jan. 20, 2011); *Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007) ("The mere illegality of a retaliatory action under a separate body of law does not make the resulting classification so illegitimate, irrational, or arbitrary as to violate the Equal Protection Clause"); *R.S. W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 440 (6th Cir. 2005); *Watkins v. Bowden*, 105 F.3d 1344 (11th Cir.1997) (per curiam) ("A [ ] retaliation claim, however, simply does not implicate the Equal Protection Clause.").

Because it is not actionable under the Equal Protection Clause, the Court grants summary judgment on Cox's retaliation claim against the Individual Defendants.

IV.    Conclusion

The Court has considered all the arguments set forth by the parties. Those arguments not addressed would not have changed the outcome of the Court's decision. For these reasons, the Court GRANTS the Individual Defendants' Motions for Summary Judgment [62]; [64]; [66] and DISMISSES WITH PREJUDICE Cox's claims against them.

SO ORDERED AND ADJUDGED this the 30th day of March, 2021.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE